UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BELL NORTHERN RESEARCH, LLC,<br><br>Plaintiff,<br><br>v.<br><br>LG ELECTRONICS INC., LG ELECTRONICS U.S.A., INC., and LG ELECRONICS MOBILE RESEARCH U.S.A., LLC,<br><br>Defendants. | Case No.: 18-CV-2864-CAB-BLM<br><br>**CLAIM CONSTRUCTION ORDER AND ORDER ON MOTION FOR SUMMARY JUDGMENT OF INDEFINITENESS**<br>**[Doc. 82]** |

On January 16, 2020, the Court held a hearing to construe certain disputed terms and phrases of U.S. Patent No. 7,945,285 and U.S. Patent No. 6,549,792, at issue in this lawsuit. The Court further heard argument on defendant's motion for summary judgment that certain claims of the '792 patent and U.S. Patent No. 7,039,435 are indefinite and therefore invalid. Having considered the submissions of the parties, the arguments of counsel, and for the reasons set forth at the hearing and summarized herein, the Court enters the claim constructions listed below and denies the motion to summary judgment.

A. Claim Construction Order

1. U.S. Patent No. 7,945,285[1]

The '285 patent is for an apparatus and method of "Integrating a Digital Encoded-Audio Bit Stream Player in a Radio-Frequency Telephone Handset." The '285 patent is a continuation of an application filed on October 7, 2004 which issued as U.S. Patent No. 7,702,363, which is a continuation of an application filed on November 23, 1999, which issued as U.S. Patent No. 7,945,284. The patents are directed at cordless telephones and a need to "expand the uses of a cordless telephone beyond that afforded by conventional cordless telephones." (Col. 1:56-57.) Specifically, integrating a digital audio bit stream player within the remote handset or matching base unit of a cordless phone. (Col. 1:61-65.)

During the prosecutions of the '284 and '363 patents, the applicants repeatedly distinguished prior art references by stating the prior art related to cellular telephones connected to cellular rely towers and not cordless telephones. The applicants emphatically reiterated to the examiner that the remote handset and matched base unit of the invention was not a cellular telephone and a cellular relay tower, and inventions within the "cellular telephone art" did not apply to their invention. [Doc. No. 83-4 at 4-5; Doc. No. 83-5 at 4-5; Doc. No. 83-12 at 4, 6.]

The claims of the '284 and '363 patents are for cordless telephones. In their February 16, 2010 application for the '285 patent, the applicants claimed the cordless telephone of the invention as a "radio-frequency telephone handset." The applicants however represented to the patent examiner that no new matter was introduced in this application to retain the 1999 priority filing date. Having previously, repeatedly and strenuously represented that these patents are not in the cellular telephone arts and that the base unit of the handset is not a cellular relay tower, the Court finds that by claiming the disclosed

---

[1] Doc. No. 1-11.

cordless telephone of the invention as an RF telephone handset and an RF unit connected to a network, the applicants cannot recapture that which they disclaimed.

The Court therefore construes:

1. **RF telephone handset** as **the remote handset of a cordless telephone using radio-frequency technology;** and
2. **RF unit connected to a network** as **the matching base unit of a cordless telephone using radio-frequency technology**.

In light of the construction limiting the RF telephone handset and base unit to a cordless phone, the Court declined to reach the construction issue regarding the step of "muting the digital encoded-audio bit stream music playing from the digital encoded-audio bit stream player **when the RF telephone handset received a telephone call,"** as moot.

2. <u>U.S. Patent No. 6,549,792</u>[2]

The '792 patent is for an Accelerometer Influenced Communication Device. Filed in 1999, the patent is directed at an apparatus and method for enhancing the operation of wireless telephones. Claim 1 of the patent claims

> A **cordless telephone**, comprising:
> a handset with an accelerometer;
> a transceiver;
> a controller; and
> a ring detection unit adapted to provide a ring indication to said controller;
> wherein there is a transition of said cordless telephone between an on-hook state and an off-hook state based on an output of said accelerometer showing an active movement of said handset.

Claim 9 of the patent claims

> A wireless handset, comprising:
> a wireless transceiver;
> a controller; and
> an accelerometer,

---

[2] Doc. No. 1-10.

> wherein the controller is adapted to receive an output from the accelerometer showing an active movement of said wireless telephone and affect a state of said wireless transceiver based on a change in a **motion history**.

Based on the plain language of the claim and the specification, the Court construed **cordless telephone** as **a telephone comprising a remote handset and corresponding matched base unit.**

Also based on the plain language of the claim and the specification, the Court construed **motion history** as **a stored pattern of movement or lack of movement.**

B. Motion for Summary Judgment of Indefiniteness

Defendant contended that certain terms of the '792 patent and the '435 patent fail to inform those skilled in the art about the scope of the invention with reasonable certainty as required by 35 U.S.C. § 112, therefore rendering the claim indefinite and invalid. *Nautilius Inc. v. Biosig Instruments, Inc.,* 572 U.S. 898, 910 (2014).

1. The '792 Patent

Defendant argued that the **ring detection unit** of claims 1 and 4 of the '792 patent is a "means plus function" element, pursuant to § 112 ¶ 6, and no corresponding structure for this unit is provide in the specification thereby rendering the claims indefinite. Plaintiff argued that "ring detection" provides sufficient structural information for the unit to apprise one of skill in the art that it is an integrated circuit or portion thereof in the handset and such circuitry was well known in the art at the time the patent was filed. The Court was not persuaded, considering the totality of the specification, that § 112 ¶ 6 applied to this element. Defendant did not establish by clear and convincing evidence that these claims are indefinite.

Defendant also argued that the term **active movement** that appears in claims 1, 9 and 15 of the '792 patent is indefinite because no one of skill in the art can ascertain from the patent what level of movement meets the requirement of "active." The Court however concluded in the context of the invention a person of skill would understand **active,** not as a level of movement, but a temporal qualifier, meaning **current or present movement**.

Defendant did not establish by clear and convincing evidence that these claims are indefinite.

Defendant also argued that the terms **to affect the state** or **influencing a transition,** found in claims 4, 9, and 14 of the '792 patent are indefinite. The Court found in the context of the invention and the specification as a whole a person of skill in the art would understand these terms to mean changing the state of the handset from on-hook to off-hook or vice versa depending on information received from components of the handset. Defendant did not establish by clear and convincing evidence that these claims are indefinite.

2. The '435 Patent[3]

The '435 patent is for a Proximity Regulation System for use with a portable cell phone and a method of operation thereof. Filed in 2001, the patent is directed at increased health concerns regarding the power used to transmit the radio frequency of cell phones when operated close to the body of the cell phone user. "For example, when held close to the ear, many users have health concerns about the high level of radio frequency energy causing damage to brain cells." [Col. 1:14-40.] The patent claims a system and method to automatically reduce the transmit power level of a portable cell phone when located near a human body thereby decreasing the perception of health risks associated with the use thereof. [Col. 1:63-67.]

Claim 1 of the '435 patent claims

A portable cell phone, comprising:
a power circuit that provides a network adjusted transmit power level as a function of a position to a communications tower; and
a proximity regulation system including:
 a location sensing subsystem that determines a location of said portable cell phone **proximate a user**; and
 a power governing subsystem, coupled to said location sensing subsystem, that determines a proximity transmit power level of said portable cell phone based on

---
[3] Doc. No. 1-9.

5
18-CV-2864-CAB-BLM

said location and determines a transmit power level for said portable cell phone based on said network adjusted power level and said proximity transmit power level. [Col. 8:2-15.]

The defendant argued that the patent provides no limitations or ranges for what would constitute **proximate a user** and claim 1 is therefore indefinite. The Court is not persuaded. In the context of the invention, considering the entirety of the claim, proximate a user does not require a particular distance from a user, but rather is a reference point for a measurement. The location sensing subsystem determines the location (i.e., distance) of the phone from the user. Based on that location and the power level based on the position of the phone to a communications tower, the power governing subsystem adjusts the power level for the phone. **Proximate a user** describes a variable used to determine the location of the phone, where it is in relation to the user to obtain a distance.

The defendant also argued that **designated sensor** in dependent claim 8 is indefinite. As a matter of judicial economy and to avoid unnecessary claim construction, the Court declined to reach this argument and deemed it withdrawn without prejudice. If plaintiff pursues infringement of Claim 8 of the '435 patent, defendant may renew this argument.

It is **SO ORDERED**.

Dated: January 21, 2020

_____
Hon. Cathy Ann Bencivengo
United States District Judge